## Warfield Natural Gas Co. v. Anderson et al.

(Decided June 2, 1933.)

DYSARD, TINSLEY & PRICHARD for appellant.

IDALAINE S. ANDERSON for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

Appellee E. A. Anderson, through his wife whom he claims was acting as his agent, entered into a contract with appellant which had the franchise for furnishing the inhabitants of the town of Greenup with natural gas, whereby he agreed to take, and the appellant agreed to furnish him, natural gas for domestic and residential use. After this contract had been entered into, Anderson extended the gas pipes in his house to an outbuilding where he was raising baby chicks for commercial purposes. The gas thus piped to the outbuilding was used in heating the brooders in this brooder house. On October 18, 1931, Anderson had on hand 921 six weeks old chickens in his brooder house. On the morning of that day, the gas supply failed due to frost getting in the regulator of the appellant. It was almost two hours before the regulator was defrosted and the gas supply restored. In the meantime, due to lack of heat and condensation, the chicks became wet and chilled. As a result, a great many of them died and the rest were so damaged that when later sold they were disposed of at a loss. Anderson thereupon brought this suit against the appellant for this loss he had thus sustained. At the close of his evidence, and again at the close of the whole case, the appellant moved for a peremptory instruction. This motion being overruled, the case was submitted to the jury and it found a verdict for appellee in the sum of $300. From the judgment entered on that verdict, this appeal is prayed.

We are of the opinion that the court erred in overruling appellant's motion for a peremptory instruction.

588

In the case of Humphreys v. Central Kentucky Natural Gas Co., 190 Ky. 733, 229 S. W. 117, 119, 21 A. L. R. 664, which was a case involving a claim for damages to the nursery of a florist because of the failure of the gas supply used to heat it, we said:

> "Coming now to consider these respective contentions, our opinion is that if there had been an express contract between the city and the company specifying the quantity and pressure of gas that should be furnished to the people of the city, or such a contract between the company and Humphreys, the rights and liabilities of the parties would be controlled by the terms and conditions of the contract."

Thus we see that where there is an express contract between the parties, their rights and obligations are to be measured by the terms of that contract. Here the contract was for domestic and residential purposes. It is conceded that the chicken enterprise of Anderson was a commercial purpose. As appellant had not contracted to furnish gas for that purpose, it would be unfair to put upon it a liability for damages for failure to keep up a gas supply out of all proportion to such liability where the use was simply domestic or residential. Cf. Hadley v. Baxendale, 9 Exch. 346.

Anderson argues, however, that as the appellant after this contract was entered into received notice of the character of his use of part of the gas furnished him, and thereafter without objection continued to furnish him gas, the contract was in effect modified so as to embrace the obligation to furnish gas for commercial purposes. To sustain his contention of notice, Anderson introduced evidence to show that the vice president of a bank in Greenup which collected the gas bills from appellant's customers in Greenup knew of Anderson's use of the gas in his brooder house as did also the man who read in September, 1932, Anderson's meter for appellant. The knowledge of the agent is the knowledge of the corporation he serves when the knowledge relates to some matter over which the agent has control and with which his duties are connected and when they relate to matters over which he has authority; otherwise, not. Ratliff v. Kentucky & West Virginia Power Co., 232 Ky. 262, 22 S. W. (2d) 620. Accordingly in that

case, it was held that knowledge on the part of a meter reader of the defective condition of the wiring in a house was not notice to the power company for which the meter reader worked and which furnished the electricity for the building in question. It follows that the knowledge of the meter reader here whose only duty was to read the meter and report the amount of gas consumed, the making of contracts or inspection of premises being no part of his duties, was not notice to the appellant of the character of Anderson's use of the gas. Still more remote is the claimed knowledge of the vice president of the bank, and even if his knowledge be attributed to the bank as collecting agent of the appellant, yet as it had no duties but to collect the bills and account for the proceeds, its knowledge of the character of Anderson's use of the gas was not notice to appellant.

It follows that the trial court erred in refusing the peremptory instruction requested.

The appeal prayed is granted, and the judgment is reversed for proceedings consistent with this opinion.